UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Criminal Action No. |
| ) | 5:20-CR-0099-GFVT-MAS |
| MYLES GREGORY BURDETTE, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

This case is before the Court on Defendant Myles Gregory Burdette's Motion to Suppress and Motion for a *Franks* hearing. [DE 46]. The district judge referred this matter to the undersigned for a Report and Recommendation. The United States responded to the Motion [DE 52], and Burdette replied [DE 60]. The Court held a hearing at which the parties presented arguments regarding whether Burdette met his burden to have a *Franks* hearing. The matter is ripe for decision. For the reasons stated herein, the Court recommends the District Court deny Burdette's Motion to Suppress.

**I.    FACTUAL BACKGROUND**

This case arises from a drug trafficking investigation in June and July 2020. At issue is a search warrant allowing the search of Defendant Myles Gregory Burdette's ("Burdette") person, residence, and vehicles. The facts leading to this state search warrant, as set forth in the search warrant affidavit ("the Affidavit") by Frankfort Police Officer Josh Baker, are as follows[1]:

---

[1] This is not a complete recitation of every fact in the Affidavit.

Burdette's co-defendant, Phillip Sapp, distributed fentanyl to a confidential informant ("CI") conducting a controlled purchases in Frankfort, Kentucky, on three occasions in June and July 2020. [DE 46-2 at Page ID 182; Superseding Indictment, DE 18 at Page ID # 77-78]. On July 13, 2020, law enforcement seized fentanyl from Sapp, at which time Sapp identified Burdette as Sapp's fentanyl supplier. [DE 46-2 at Page ID 182; DE 62 at Page ID # 297]. Sapp stated he had purchased fentanyl from "Bernard" at his residence at 2969 Waco Road in Lexington, Kentucky, at least forty-five times in the preceding month and a half. [DE 46-2 at Page ID # 182; DE 62 at Page ID # 297]. Sapp identified a photograph of Burdette as the man he knew as "Bernard" and a law enforcement database identified Burdette as the resident of 2969 Waco Road. Sapp provided Burdette's phone number to law enforcement, and stated Burdette had a "gray and blue truck." [DE 46-2 at Page ID # 182]. Sapp told law enforcement that Burdette had a "right hand man" who was a white male known as "Turbo." [DE 46-2 at Page ID # 182]. Sapp informed the officers Burdette had multiple security cameras on the inside and outside of his residence. Sapp stated Burdette stored large amounts of cash and numerous firearms at 2969 Waco Road.

The search warrant affiant Officer Josh Baker and other law enforcement officers then investigated Burdette and conducted surveillance of 2969 Waco Road. The investigation corroborated the details from Sapp. Officers confirmed Burdette's telephone number matched the one supplied by Sapp. Officer Baker observed a blue truck and a black/gray truck[2] at Burdette's residence. The following day, Officer Baker observed Burdette and a white male in the gray truck. [DE 46-2 at Page ID # 183].

---

[2] This vehicle is described in the Affidavit as a "black Dodge pickup truck" and a "gray Dodge pickup truck" with license plate 759_YJY. This appears to be same vehicle and distinguished from the blue Chevrolet pickup truck with license plate 9083_EE. The Court will refer to the former as "the gray truck" and the latter as "the blue truck" for clarity herein.

2

On one occasion in July 2020, Officer Baker observed an individual with a known criminal history leave Burdette's home and, upon being followed by Officer Baker, drive in a manner consistent with counter surveillance of Officer Baker. A week later, Officer Baker observed another individual, Anthony Bennett ("Bennett"), depart Burdette's residence, drive to Home Depot, and return to Burdette's residence using what appeared to be a route designed to evade police detection. [DE 46-2 at Page ID #185]. Officer Baker observed Bennett exit Burdette's home about an hour and a half later, "wearing blue latex gloves, common to wear when handling dangerous narcotics, such as heroin or fentanyl." [DE 46-2 at Page ID # 186].

On July 27, 2020, Officer Baker was again conducting surveillance of Burdette's residence when Phillip Campbell ("Campbell") and a female entered Burdette's home. Campbell and Burdette departed together in the gray truck and returned "[a] short time later." [DE 46-2 at Page ID # 186]. The two re-entered Burdette's home for some period of time before "Campbell exited the residence, wearing a gray backpack." [DE 46-2 at Page ID # 186]. Campbell drove directly from Burdette's residence to a nearby parking lot where he had a brief exchange with a male and a female (later identified as Jared and Natalie Hamilton) in a Dodge Caravan; the exchange included Campbell appearing to reach into his right pocket. The Affidavit does not mention the gray backpack at the meeting between Campbell and the Hamiltons.

Officer Baker continuously surveilled the Hamiltons into Scott County, Kentucky, where the Scott County Sheriff's Department conducted a traffic stop on the Hamilton's vehicle. During a consent search incident to the stop, officers found approximately 3 grams of heroin, which Jared Hamilton admitted to purchasing from Campbell in the parking lot where Officer Baker had just observed their meeting.

3

The search warrant permitted a search of 2969 Waco Road, the gray truck, the blue truck, and Burdette's person for a lengthy list of controlled substances, electronic equipment, drug paraphernalia, and weapons, among other items. The search warrant also permitted a search of Burdette's cell phone.[3] Burdette now asks the Court to suppress the evidence seized from his residence and person as the result of the search warrant, the statements he made thereafter, and the evidence on his cell phone as the fruits of poisonous tree. Burdette challenges the sufficiency of the evidence supporting probable cause and the nexus between the places search and drug trafficking. The Court will address each of these issues below.

## II.   ANALYSIS

### A.   THE EVIDENCE WAS SUFFICIENT TO SUPPORT A FINDING OF PROBABLE CAUSE.

"Probable cause supports a search warrant when the affidavit demonstrates 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Powell*, 847 F.3d 760, 769 (6th Cir. 2017) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The "review of the sufficiency of the evidence supporting probable cause is limited to

---

[3] Burdette did not specifically address the search warrant's authorization of the seizure of "cellular telephones [sic] information (to include phonebook, call history including received, dialed and missed calls, incoming, outgoing and drafts of text messages, IMEI/ESN/IMSI number, pictures and images, video, audio recordings, ringtone, phone details) memory card and SIM card, for a full forensic examination by use of specialized software and techniques accepted by the computer forensic scientific community for the proper seizure and retention of digital evidence." [DE 46-2 at Page ID # 178]. Burdette makes two vague arguments for suppressing the evidence found on his cell phone. First, he "argues that the Search Warrant lacked probable cause to search the Defendant's person, vehicles, phone and the Defendant's home." [DE 46-1 at Page ID # 171]. Second, he claims that "[d]ue to the affidavit not having a proper nexus between the alleged drug trafficking and Mr. Burdette and his home, the evidence seized by the government that is derivative from the search made upon him, the search of his house and phone should be suppressed as fruit of the poisonous tree." [DE 46-1 at Page ID # 171]. These two sentences are, at best, perfunctory claims regarding the cell phone data seizure. The Court is under no obligation to address arguments Burdette did not develop. "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (citation omitted).

4

the information presented in the four-corners of the affidavit . . ." *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005) (citations omitted). *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006). "Nevertheless, when considering that information, we look to the totality of the circumstances." *United States v. Dyer*, 580 F.3d 386, 390 (6th Cir. 2009).

Burdette challenges probable cause in the Affidavit, arguing that the CI was unreliable and the corroboration of the CI's tip was "not sufficient to establish probable cause." [DE 46-1 at Page ID # 172]. The Court disagrees with this assessment. Burdette's codefendant Sapp, not the unnamed CI, provided the following information that law enforcement corroborated and Officer Baker set forth in the Affidavit: Burdette's address, Burdette's telephone number, the fact that there were cameras outside Burdette's home, and the color of his trucks. Sapp also stated he had personally engaged in the frequent, ongoing purchase of fentanyl from Burdette at 2969 Waco Road in June and July 2020. [See unredacted Search Warrant at DE 62-1]. Finally, law enforcement was aware that Sapp was distributing narcotics in June and July 2020 on multiple occasions via the controlled purchases. Consequently, it was unsurprising that Sapp confessed he had a source for obtaining the drugs.

The sufficiency of the evidence is bolstered when the Court considers that two different individuals visiting Burdette's residence attempted to conduct counter surveillance or evade law enforcement coming and going from the home. The analysis is further strengthened by the drug transaction between Campbell and the Hamiltons that occurred immediately after Campbell departed Burdette's residence. "The affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added. It is the totality of the circumstances that persuade us that the affidavit in the instant case was, in fact, not merely conclusory and bare bones in nature but sufficient." *United States v. Allen*, 211 F.3d 970, 975 (6th

Cir. 2000). The totality of these circumstances represents a fair probability that evidence of drug trafficking would be found at Burdette's residence and on his person. For these reasons, the Court finds the Affidavit in support of the search warrant provided sufficient evidence to support probable cause to search Burdette's residence and person.

B.  **THERE WAS A SUFFICIENT NEXUS TO SUPPORT A SEARCH OF BURDETTE'S RESIDENCE AND PERSON.**

Having concluded that there was sufficient evidence to support probable cause, the Court turns to the question of whether the four corners of the Affidavit set forth a sufficient nexus between the alleged drug trafficking and Burdette and his residence.

> The connection between the residence and the evidence of criminal activity must be specific and concrete, not "vague" or "generalized." If the affidavit does not present sufficient facts demonstrating why the police officer expects to find evidence in the residence rather than in some other place, a judge may not find probable cause to issue a search warrant. And of course, whether an affidavit establishes a proper nexus is a fact-intensive question resolved by examining the totality of circumstances presented.

*United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016)(citations omitted). The Brown Court emphasized that there must be "some reliable evidence connecting the known drug dealer's ongoing criminal activity to the residence; that is, we have required facts showing that the residence had been used in drug trafficking, such as an informant who observed drug deals or drug paraphernalia in or around the residence." *Id*. at 383. However, the statement of a confidential informant, even when corroborated to some extent, is insufficient. The Sixth Circuit's decision in *United States v. Higgins*, 557 F.3d 381 (6th Cir. 2009), is a useful comparison here.

In *Higgins*, law enforcement located a significant quantity of narcotics during a traffic stop. The driver of the vehicle—whose name did not appear in the search warrant affidavit but was known the to the signing judge—stated he had purchased the drugs from Higgins' residence. *United States v. Higgins*, 557 F.3d 381, 385 (6th Cir. 2009). The two passengers in the vehicle

6

confirmed the driver's story. *Id*. Law enforcement confirmed the address the driver provided was in fact Higgins' residence, and that his motorcycle was parked outside. *Id*. This was the extent of the information connecting Higgins' residence to drug trafficking and the basis for the search warrant. *Id*. at 390. The Sixth Circuit held that there was an insufficient nexus between Higgins' residence and drug trafficking because the affidavit contained "no assertion that this informant is known to be reliable, nor did the police corroborate any of the informant's statements beyond the innocent fact that Higgins lived at the stated location and the irrelevant (to the determination of whether Higgins's house contained evidence of a present-day crime) fact that Higgins had a criminal record." *Id*.

While there is some factual overlap between this case and *Higgins*, the information in the Affidavit here is far more comprehensive. In contrast to *Higgins*, Sapp is a named informant and co-defendant in the public record; Sapp provided details about the outside and inside of Burdette's residence; police conducted surveillance of Burdette's residence for approximately two weeks, observing several individuals with known criminal backgrounds visiting Burdette [see DE 62-1 at Page ID # 318-20]; police conducted surveillance of the individuals visiting Burdette, two of whom attempted to evade that surveillance; and Campbell traveled directly from Burdette's residence to a nearby parking lot where he allegedly engaged in a drug transaction. These facts provided justification for "why evidence of illegal activity will be found 'in a particular place.'" *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004); *see also United States v. Dyer*, 580 F.3d 386, 391 (6th Cir. 2009) (finding sufficient nexus where the affidavit averred "that the confidential informant witnessed the drug deal on the premises specified in the search warrant.").

For these reasons, the Court finds there was sufficient evidence to support a finding of probable cause and a sufficient nexus between Burdette's person and residence to support a finding

7

that evidence of criminal activity would be found there. Further, because probable cause supported the warrant, there is no justification to suppress evidence found during the search, Burdette's statements, or the evidence obtained from his cell phone as fruits of the poisonous tree. Thus, the Court recommends the motion to suppress be denied.

C.     **BURDETTE IS NOT ENTITLED TO A *FRANKS* HEARING.**

Burdette claims that he is entitled to a *Franks* hearing because Officer Bake made material omissions and one false statement in his Affidavit in support of the search warrant. The standard for a *Franks* hearing, however, is high and Burdette has not made the requisite showing here.

A *Franks* hearing is appropriate only

> where the defendant makes a substantial preliminary showing that [1] a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [2] if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

*Franks v. Delaware*, 438 U.S. 154, 155–56 (1978). Burdette's request for a Franks hearing rest primarily on his claim that Officer Baker omitted two critical facts. "But Franks is generally inapplicable to such omissions, except where the affiant excluded critical information intentionally to mislead the magistrate judge." *United States v. Alford*, 717 F.App'x 567, 570 (6th Cir. 2017). The omission must be "critical to the finding of probable cause." *United States v. Fisher*, 824 F.App'x 347, 353 (6th Cir. 2020). "[T]he standard to obtain a Franks hearing for a material omission is higher than a false statement and is only merited in rare cases." *United States v. Hampton*, 760 F.App'x 399, 404 (6th Cir. 2019). The two omissions in this case, described below, do not raise to the level of "critical information," nor were they "critical to the finding of probable cause[,]" thus, Burdette has not made a substantial primary showing that he is entitled to a Franks hearing on these omissions.

8

The search warrant describes Bennett outside Burdette's home wearing latex gloves "which is common to ear when handling dangerous narcotics, such as heroin or fentanyl." [Affidavit in Support of and Petition for [Stat] Search Warrant, DE 46-2, Page ID # 186]. Burdette states the surveillance video from his residence shows Bennett walking outside Burdette's home wearing latex gloves, but also carrying a spray bottle and wash cloth. [DE 46-1 at Page ID # 175-76]. Burdette insists the omitted fact that Bennett was carrying a washcloth and spray bottle aroused an inference that a simple housecleaning was illicit. Burdette claims if the details about the spray bottle and washcloth were included in the affidavit, "the most reasonable conclusion was that Mr. Bennett was cleaning and not handling dangerous narcotics." [DE 46-1 at Page ID # 176]. In light of all of the information in the Affidavit, the Court disagrees that the most reasonable conclusion was that Bennett was using the gloves for cleaning. Certainly, that is one possible conclusion the signing judge could have reached if the details about the washcloth and spray bottle had been included. The judge could have, however, still concluded that the washcloth and spray bottle were being used in connection with the processing of narcotics. The judge could have made no inference about the gloves at all.

"[A]n affidavit which omits potentially exculpatory information is less likely to present a question of impermissible official conduct than one which affirmatively includes false information. This is so because an allegation of omission potentially opens officers to endless conjecture about investigative leads, fragments of information, or other matter that might, if included, have redounded to defendant's benefit." *United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997) (quotation marks and citations omitted). The presence of the gloves, with or without the presence of the washcloth and spray bottle, are not critical to a finding of probable cause in light of the information in the Affidavit. The washcloth and spray bottle are mere "fragments of

9

information" that *might* "have redounded to the defendant's benefit"—though even that conclusion is a stretch. Even if the Affidavit had not mentioned the gloves at all, the signing judge could have found probable cause based on the surveillance of Burdette's residence and the numerous cooperating statements regarding the sale of narcotics from that residence. Burdette has failed to make a showing that the detail about the washcloth and spray bottle were omitted intentionally to mislead the signing judge and failed to show that these details, if included, would have undermined the probable cause finding.

Burdette also argues Officer Baker omitted the second trip Burdette and Phillip Campbell made to and from Burdette's house on July 27, 2020. Burdette and Campbell arrived back at Burdette's residence a short time later, towing Burdette's broken-down blue truck behind his gray truck. Campbell was in the blue truck, steering it (as it was connected by a chain to the gray truck). Burdette claims this provides a benign reason for Campbell to be at Burdette's house unrelated to drug trafficking. The inclusion of this information, however, would not have excluded the possibility that Campbell and Burdette were also involved in drug trafficking at Burdette's residence. Assisting with the blue truck and obtaining narcotics could have both occurred, and it is unreasonable to conclude the information about the broken truck trip was "critical information" that would have altered the outcome. This information would not have undercut Officer Baker's observations of Campbell driving directly from Burdette's residence to a nearby parking lot and conducting a narcotics transaction. "Moreover, it is unreasonable to expect a police officer to include every piece of exculpatory information gathered about the case in the affidavit because the standard for obtaining a search warrant is lower than the standard to convict." *United States v. Sawyers*, 127 F.App'x 174, 183, 2005 WL 647774, at *9 (March 22, 2005).

Finally, Burdette argues Officer Baker materially misrepresented his experience in the Affidavit because he stated he was a member of the Lexington Police Department but was actually a member of the Frankfort Police Department.[4] This statement was false, however, it appears to have been a clerical error, not made "knowingly and intentionally, or with reckless disregard for the truth[.]" *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978). The statement was certainly not "necessary to the finding of probable cause[.]" *Id.* "A defendant cannot demonstrate entitlement to a *Franks* hearing by merely identifying typographical errors in the affidavit. *United States v. Frazier*, 423 F.3d 526, 539 (6th Cir. 2005). Burdette did not claim there is any difference in the legal authority or competency of the members of the Lexington and Frankfort police departments. Although a Fayette County District Judge in Lexington authorized the search warrant, there is no valid argument that the judge would have put more weight in the affidavit of a Lexington officer versus a Frankfort officer. Thus, this argument fails both perquisites for a *Franks* hearing.

### D. THE *LEON* GOOD FAITH EXCEPTION APPLIES IN ANY EVENT

If, for any reason, a reviewing court finds that the search warrant was legally deficient, the Court finds that the *Leon* good faith exception to the warrant requirement applies. The *Leon* good faith exception permits the admission of evidence "seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *United States v. Leon*, 468 U.S. 897, 905 (1984). "[C]ourts will not exclude evidence when the costs of suppression outweigh the benefits of deterrence, such as when reasonable officers rely on a magistrate's warrant in good

---

[4] Burdette raised this argument for the first time in his Reply, thus, the Court is not obligated to address it. *See Sherman v. United States*, 2017 WL 3765765, at *3 (E.D. Mich. Aug. 7, 2017) (noting "long-standing precedent in the Sixth Circuit regarding waiver of issues raised for the first time in reply briefs"). *United States v. Jerkins*, 871 F.2d 598, 602 n.3 (6th Cir. 1989) (refusing to address novel issues in appellant's reply brief). However, because the United States did not object to the argument on this basis, and substantively addressed it at the hearing, the Court briefly addresses the argument herein.

faith. . . . That exception comes with an exception of its own. An officer 'cannot reasonably presume' that a 'facially deficient' warrant is valid." *United States v. Harney*, 934 F.3d. 502, 505 (6th Cir. 2019) (citing *United States v. Leon*, 468 U.S. 897, 919-21 (1984)). The "exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." *Leon*, 468 U.S. at 916.

Here, the Court has found there was no police or judicial misconduct in the issuance of the search warrant.

> If the purpose of the exclusionary rule is to deter unlawful police conduct, then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.
>
> In short, where the officer's conduct is objectively reasonable, excluding the evidence will not further the ends of the exclusionary rule in any appreciable way; for it is painfully apparent that ... the officer is acting as a reasonable officer would and should act in similar circumstances. Excluding the evidence can in no way affect his future conduct unless it is to make him less willing to do his duty.
>
> This is particularly true, we believe, when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope. In most such cases, there is no police illegality and thus nothing to deter. It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment. In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient.

*United States v. Leon*, 468 U.S. 897, 919–21 (1984). The officers involved reasonably believed they had authorization from a neutral judicial officer, pursuant to a multiple-page search warrant detailing weeks of investigation, to conduct a search of Burdette's residence and person. Accordingly, the *Leon* exception to the exclusionary rule applies and the evidence found as a result of the search, and the statements Burdette made thereafter, should not be suppressed.

### III.     CONCLUSION

For reasons stated herein, the Court **RECOMMENDS** that the District Court **DENY** the Motion to Suppress [DE 46]. The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of said statute. As defined by § 636(b)(1), Fed. R. Crim. P. 59(b), and local rule, within **fourteen** days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court.

Entered this 3rd day of February, 2021.



Signed By:
Matthew A. Stinnett
United States Magistrate Judge