UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 5:20-cr-00099-GFVT-MAS |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM** |
| MYLES GREGORY BURDETTE, | ) | **OPINION** |
| | ) | **&** |
| Defendant. | ) | **ORDER** |
| | ) | |

*** *** *** ***

This matter is before the Court upon Magistrate Judge Matthew A. Stinnett's Report and Recommended Disposition. [R. 68.] Defendant Myles Gregory Burdette filed a Motion to Suppress [R. 46] and the United States responded to the Motion. [R. 61.] The Court held an evidentiary hearing where the parties presented their arguments. [R. 65.] The Magistrate Judge recommends that this Court deny Mr. Burdette's Motion to Suppress. [R. 68.] For the reasons that follow, this recommendation will be adopted and Defendant's objections will be denied.

**I**

Judge Stinnett conducted an evidentiary hearing on the issues raised in Burdette's motion to suppress and, thereafter, issued a written recommendation wherein he recommends that both Burdette's motion and his request for a Franks hearing be denied. [R. 68.] In his recommendation, Judge Stinnett thoroughly sets out his proposed findings of fact and conclusions of law. [*Id.*] Burdette does not offer specific objections to the factual recitation provided in the Report and Recommendation, but does object to the Magistrate's application of

the law to those facts. [R. 71.] Because Burdette does not specifically object to the Magistrate's proposed findings of fact, the Court adopts them and, for convenience, reprints them herein:

> This case arises from a drug trafficking investigation in June and July 2020. At issue is a search warrant allowing the search of Defendant Myles Gregory Burdette's ("Burdette") person, residence, and vehicles. The facts leading to this state search warrant, as set forth in the search warrant affidavit ("the Affidavit") by Frankfort Police Officer Josh Baker, are as follows[]: Burdette's co-defendant, Phillip Sapp, distributed fentanyl to a confidential informant ("CI") conducting a controlled purchases in Frankfort, Kentucky, on three occasions in June and July 2020. [R. 46-2 at 182; R. 18 at 77-78]. On July 13, 2020, law enforcement seized fentanyl from Sapp, at which time Sapp identified Burdette as Sapp's fentanyl supplier. [R 46-2 at 182; R. 62 at 297]. Sapp stated he had purchased fentanyl from "Bernard" at his residence at 2969 Waco Road in Lexington, Kentucky, at least forty-five times in the preceding month and a half. [R. 46-2 at 182; R. 62 at 297]. Sapp identified a photograph of Burdette as the man he knew as "Bernard" and a law enforcement database identified Burdette as the resident of 2969 Waco Road. Sapp provided Burdette's phone number to law enforcement, and stated Burdette had a "gray and blue truck." [R. 46-2 at 182]. Sapp told law enforcement that Burdette had a "right hand man" who was a white male known as "Turbo." [R. 46-2 at 182]. Sapp informed the officers Burdette had multiple security cameras on the inside and outside of his residence. Sapp stated Burdette stored large amounts of cash and numerous firearms at 2969 Waco Road. The search warrant affiant Officer Josh Baker and other law enforcement officers then investigated Burdette and conducted surveillance of 2969 Waco Road. The investigation corroborated the details from Sapp. Officers confirmed Burdette's telephone number matched the one supplied by Sapp. Officer Baker observed a blue truck and a black/gray truck[1] at Burdette's residence. The following day, Officer Baker observed Burdette and a white male in the gray truck. [R. 46-2 at 183]. On one occasion in July 2020, Officer Baker observed an individual with a known criminal history leave Burdette's home and, upon being followed by Officer Baker, drive in a manner consistent with counter surveillance of Officer Baker. A week later, Officer Baker observed another individual, Anthony Bennett ("Bennett"), depart Burdette's residence, drive to Home Depot, and return to Burdette's residence using what appeared to be a route designed to evade police detection. [R. 46-2 at 185]. Officer Baker observed Bennett exit Burdette's home about an hour and a half later, "wearing blue latex gloves, common to wear when handling dangerous narcotics, such as heroin or fentanyl." [R. 46-2 at 186]. On July 27, 2020, Officer Baker was again conducting surveillance of Burdette's residence when Phillip Campbell ("Campbell") and a female entered Burdette's home. Campbell and Burdette departed together in the gray truck and returned "[a] short time later." [R. 46-2 at

---

[1] This vehicle is described in the Affidavit as a "black Dodge pickup truck" and a "gray Dodge pickup truck" with license plate 759_YJY. This appears to be same vehicle and distinguished from the blue Chevrolet pickup truck with license plate 9083_EE. The Court will refer to the former as "the gray truck" and the latter as "the blue truck" for clarity herein.

186]. The two re-entered Burdette's home for some period of time before "Campbell exited the residence, wearing a gray backpack." [R. 46-2 at 186]. Campbell drove directly from Burdette's residence to a nearby parking lot where he had a brief exchange with a male and a female (later identified as Jared and Natalie Hamilton) in a Dodge Caravan; the exchange included Campbell appearing to reach into his right pocket. The Affidavit does not mention the gray backpack at the meeting between Campbell and the Hamiltons. Officer Baker continuously surveilled the Hamiltons into Scott County, Kentucky, where the Scott County Sheriff's Department conducted a traffic stop on the Hamilton's vehicle. During a consent search incident to the stop, officers found approximately 3 grams of heroin, which Jared Hamilton admitted to purchasing from Campbell in the parking lot where Officer Baker had just observed their meeting. The search warrant permitted a search of 2969 Waco Road, the gray truck, the blue truck, and Burdette's person for a lengthy list of controlled substances, electronic equipment, drug paraphernalia, and weapons, among other items. The search warrant also permitted a search of Burdette's cell phone.[2]

[R. 68 at 1–4.] Following the seizure of evidence from Burdette's person and residence, Burdette initiated the present proceedings in order to suppress all evidence obtained in the search, as well as his statements, as fruits of the poisonous tree. [*Id.* at 4.]

## II

In Mr. Burdette's Motion to Suppress, he presents two reasons as to why the search of his residence and its resulting evidence should be suppressed. [R. 71.] First, Mr. Burdette argues that co-Defendant Phillip Sapp was not a credible informant, that Sapp's tips were not independently corroborated, and therefore, that probable cause did not exist to search Mr. Burdette's residence. [R. 71 at 2–4.] Additionally, Mr. Burdette argues that there was no "substantial nexus" between himself, his drug dealing activities, and his residence. [*Id.* at 4–5.] Finally, Mr. Burdette disagrees with Judge Stinnett's determination that the *Leon* good-faith exception applies in this case and asks for a *Franks* hearing. [*Id.* at 6–8.] Judge Stinnett

---

[2] Judge Stinnett refused to address the vague arguments for suppressing the evidence found on Burdette's cell phone because Burdette simply made, at best, "perfunctory claims regarding the cell phone data seizure." [R. 68 at n.3]. After reviewing Judge Stinnett's conclusion, this Court will likewise decline to address the cell phone argument that Burdette failed to develop. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)

thoughtfully considered each of these issues and determined that Mr. Burdette's Motion should be denied.

**A**

First, Judge Stinnett addressed Mr. Burdette's argument that the confidential informant was unreliable and the corroboration of the CI's tip was "not sufficient to establish probable cause." [R. 46-1 at 172.] Judge Stinnett concluded that the Affidavit in support of the search provided sufficient evidence to support probable cause to search Burdette's residence. [R. 68 at 5–6.] As the Sixth Circuit has reaffirmed, "[p]robable cause supports a search warrant when the affidavit demonstrates 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Powell*, 847, F.3d 760, 769 (quoting *Illinois v. Gates,* 462 U.S. 213, 238 (1983)). Further, the "review of the sufficiency of the evidence supporting probable cause is limited to the information presented in the four-corners of the affidavit . . ." *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005) (citations omitted). *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006). "Nevertheless, when considering that information, we look to the totality of the circumstances." *United States v. Dyer*, 580 F.3d 386, 390 (6th Cir. 2009). As Judge Stinnett points out, the information underlying the search warrant was given by Burdette's co-defendant Sapp. [R. 62-1.] Sapp provided the officer with specific information regarding Burdette that Officer Baker corroborated and set forth in the Affidavit, including: Burdette's address, Burdette's telephone number, the fact that there were cameras outside Burdette's home, and the color of his trucks. [*Id.*] Sapp also stated he had personally engaged in the frequent, ongoing purchase of fentanyl from Burdette at 2969 Waco Road in June and July 2020. [*Id.*] Further, Judge Stinnett properly weighed the irregular actions of individuals leaving Burdette's house in considering the "totality of the circumstances" surrounding the Affidavit.

*United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000). For example, the "counter-surveillance" and evasion measures that two different individuals took when coming to and going from Burdette's residence. In addition to the Phillip Campbell drug transaction [*see* R. 68 at 5], the circumstances signified a fair probability that evidence of drug trafficking would be found at Burdette's residence and on his person. Consequently, Officer Baker's Affidavit provided the magistrate judge a substantial basis to find probable cause to issue the warrant.

Mr. Burdette did file a timely objection to this portion of the Recommended Disposition, specifically arguing that Sapp was not a trusted source of information, that the information provided by Sapp did not uniquely identify Burdette, and that Sapp had a personal motive for giving the information. [R. 71 at 2–3.] As indicated by the magistrate judge, however, Sapp provided a list of detailed information specific to Burdette and law enforcement corroborated much of that information through surveillance. [R. 68 at 2–3.] Further, law enforcement's surveillance unveiled further indicia of drug trafficking activity, including an individual engaging in a drug deal immediately after leaving Burdette's residence, among other examples. [*Id.* at 3; *see* R. 75 at 6.] Therefore, this Court rejects Burdette's argument that the information underlying the Affidavit was insufficient to establish probable cause.

**B**

Judge Stinnett then turned to whether or not there was a sufficient nexus to support a search of Burdette's residence and person. [R. 68 at 6.] Looking within the four corners of the Affidavit, *United States v. Brown*, 828 F.4d 375, 382 (6th Cir. 2016), Judge Stinnett found that the specific information within the Affidavit[3] created a sufficient nexus between Burdette's

---

[3] "Sapp is a named informant and co-defendant in the public record; Sapp provided details about the outside and inside of Burdette's residence; police conducted surveillance of Burdette's residence for approximately two weeks,

person and his residence to support a finding that evidence of criminal activity would be found there. [*Id.* at 6–8.] Burdette objects to Judge Stinnett's conclusion that a sufficient nexus exists. [R. 71 at 4–5.] Burdette argues that the abovementioned information contained within the Affidavit might raise a possibility, but not a probability of a crime, and presents what he views as better examples of evidence that would give a fair probability of a crime. [*Id.*] Without arguing exhaustively over Burdette's proposed examples, the evidence contained within the Affidavit sufficiently created a nexus between Burdette's person and residence to support a finding that evidence of criminal activity would be found there. The information was comprehensive and the irregular activities observed by police were time-and-time-again tied to Burdette's residence. [*See* R. 68 at 2–3.] Consequently, the Court rejects Burdette's argument that there was no sufficient nexus between "drug dealing and Mr. Burdette and his residence." [R. 71.] Further, because probable cause supported the search warrant, the Court will adopt Judge Stinnett's recommendation to deny the motion to suppress Burdette's statements, evidence found during the search, or the evidence obtain from his cell phone.

### C

Judge Stinnett next recommended denying Burdette's request for a *Franks* hearing. [R. 68 at 8–11.] Judge Stinnett concluded that even though Officer Baker omitted two allegedly critical facts[4] in his Affidavit, neither of the facts rose to the level of "critical information," nor were they "critical to the finding of probable cause." [*Id.*] (citing *United States v. Hampton*, 760 F.App'x 399, 404 (6th Cir. 2019)). Burdette identified three facts underlying his request for a

---

observing several individuals with known criminal backgrounds visiting Burdette [*see* R. 62-1 at 318-20]; police conducted surveillance of the individuals visiting Burdette, two of whom attempted to evade that surveillance; and Campbell traveled directly from Burdette's residence to a nearby parking lot where he allegedly engaged in a drug transaction." [R. 68 at 7.]
[4] Judge Stinnett also discusses a third, non-critical fact regarding the Affidavit.

6

*Franks* hearing: (1) the Affidavit describing Burdette leaving his house wearing latex gloves, without mentioning that he was also carrying a spray bottle and wash cloth; (2) the Affidavit omitting the fact that Burdette and Phillip Campbell made a second trip to Burdette's house in order to tow Burdette's broken-down truck; and (3) the fact that Officer Baker incorrectly identified himself as a member of the Lexington Police Department on the Affidavit instead of the Frankfort Police Department. [R. 68 at 1–11.] Judge Stinnett found that (1) Burdette failed to make a showing that the presence of the washcloth and spray bottle were omitted intentionally to mislead the signing judge and failed to show that they otherwise would have undermined the probable cause showing; (2) it is unreasonable to conclude that the information regarding the broken truck was "critical information" that would have altered the outcome; and (3) the typographical error of Officer Baker fails to meet the bar for a *Franks* hearing for multiple reasons. [*Id.*]

In his timely objection, Burdette re-asserts the same arguments addressed by Judge Stinnett in the Report and Recommendation. [R. 71 at 6–7.] As discussed by Judge Stinnett, *Franks* hearings are rare and are only warranted:

> where the defendant makes a substantial preliminary showing that [1] a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [2] if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

*Franks v. Delaware*, 438 U.S. 154, 155–56 (1978). Here, Burdette has failed to meet the necessary prerequisites for a *Franks* hearing and his request will be denied.

**D**

Alternatively, Judge Stinnett finds that the *Leon* good-faith exception applies in the present case. [R. 68 at 11.] Specifically, Judge Stinnett found that the officers involved reasonably believed that they had authorization from a neutral magistrate, pursuant to a multiple-page search warrant detailing weeks of investigation, to conduct a search of Burdette's residence and person. [*Id.*] Burdette refutes the applicability of the *Leon* good-faith exception in the present case, asserting that Officer Baker intentionally or recklessly omitted information that would have otherwise altered the magistrate judge's decision to issue a warrant. [R. 75 at 7 –8.]; *see Powell, 847 F.3d* at 923 (citing *Franks v. Delaware*, 438 U.S. 154 (1978)). As Judge Stinnett aptly concludes, however, this allegedly omitted information would not have been material to the magistrate judge's probable-cause determination. [*See* R. 68 at 11]; *see also United States v. Rose*, 714 F.3d 362, 370 (6th Cir. 2013) (citing *Franks*, 438 U.S. at 171–72, 98 S.Ct. 2674). Having failed to make a "substantial preliminary showing" that would have entitled Burdette to a *Franks* hearing, this claim cannot overcome the *Leon* good-faith exception. *Powell*, 847 F.3d at 770 (citing *Franks*, 438 U.S. at 155, 98 S.Ct. 2674). However, because the Court finds that the Fourth Amendment does not protect the relevant evidence in this case, the Court will not adopt Judge Stinnett's alternative recommendation found in subsection II.D.

**III**

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

8

1. Defendant Myles Gregory Burdette's Objections to the Magistrate Judge's Report and Recommendation, except those the Court declines to address, [**R. 71**] are **OVERRULED**;

2. The Magistrate Judge's Recommended Disposition [**R. 68**] is **ADOPTED IN PART** as to Sections II.A–II.C and the Conclusion, for the reasons set forth in this Order, as and for the opinion of this Court;

3. Defendant Myles Gregory Burdette's Motion to Suppress Evidence [**R. 46**] is **DENIED**; and

4. Defendant Myles Gregory Burdette's corresponding Request for a *Franks* hearing [**R. 46**] is **DENIED**.

This is the 3rd day of March, 2021.

Gregory F. Van Tatenhove
United States District Judge